**MEMO ENDORSED** 17CR575

US v. Shahzad Ahmed
17 CR 575

Sir,

We have no access to Type Writer, or the Computer, Therefore please accept this Hand written motion.

Thank you.

---

Application for compassionate release, pursuant to 18 U.S.C. Section 3582, is denied. It appears that Mr. Ahmed has exhausted his administrative remedies and the Court will assume that his health challenges place him at a high risk from the coronavirus. But, even assuming these health challenges support a finding that there are extraordinary and compelling reasons to release Mr. Ahmed, which the Court assumes here, the Court is required to consider the sentencing factors set forth in 18 U.S.C. Section 3553(a). These factors cut strongly against early release. The underlying criminal conduct — importation of heroin through sophisticated means — is extremely serious. More troubling is that Mr. Ahmed is no criminal rookie. On the contrary, his recidivism displays utter contempt for the rule of law, as does his record of misbehavior in prison. In response to his undeniably troubling criminal history, Mr. Ahmed provides the unconvincing promise that he will not be a recidivism risk because he faces deportation. This promise has no credibility and, in any event, releasing Mr. Ahmed after serving just over a third of his sentence would thoroughly undermine respect for the law. For these reasons, the Court finds that the Section 3553(a) factors justify denial of the application.

So Ordered.

1/29/21

Dec-8-2020

United States

v.                                    17-CR-00575 (KMK)

Shahzad Ahmed

Motion For Compassionate Release.

Judge Karas,

Defendant Moves Pursuant to 18 U.S.C. 3582(c)(1)(A) For Compassionate Release.

This Court Has The Authority To Reduce Defendant's Sentence.

As Amended By The First Step Act, A Court May Modify A Term Of Imprisonment On The Motion Of The Petitioner After Considering The Factors Set Forth In §18 U.S.C. 3553(a) if "Extraordinary And Compelling Reasons Warrant Such A Reduction." 18 § U.S.C. 3582(c)(1)(A)(i). "Extraordinary And Compelling Reasons" Was Previously Defined By The United States Sentencing Commission ("Sentencing Commission") In U.S.S.G. 1B1.13, Application Note 1. Before The Passage Of The First Step Act, The Sentencing Commission Provided That A Sentence May Be Modified Due To The

Case 7:17-cr-00575-KMK   Document 109   Filed 01/31/21   Page 3 of 17
Case 7:17-cr-00575-KMK   Document 104   Filed 01/14/21   Page 3 of 17

2)

Petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. 1B1.13, n. 1(A)-(C). The Sentencing Commission also provided a "Catch-All Provision" that allowed for a sentence modification upon a showing of "Extraordinary and Compelling reasons other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id at n. 1(D). Use of the "Catch-All Provision" prior to the First Step Act was {2020 U.S. Dist. Lexis 5} severely restricted because it required approval from the BOP before an individual could petition the District Court.

However, § U.S.S.G 1B1.13 is now outdated following the passage of the First Step Act, which allows individuals to petition the District Court directly without clearance from the BOP. And rightly so, because according to the Inspector General of the Department of Justice (the "OIG") issued a report in 2013 that the Director of the BOP rarely filed § 18 U.S.C. 3582(c)(1)(A) sentence reduction motions (even for the defendants who clearly met the Sentencing Commission's objective criteria for a sentence reduction). See U.S. Dept's of Justice Office of the Inspector General

Case 7:17-cr-00575-KMK Document 109 Filed 01/31/21 Page 4 of 17
Case 7:17-cr-00575-KMK Document 104 Filed 01/14/21 Page 4 of 17

3)

The Federal Bureau of Prisons' Compassionate Release Program (Apr. 2013).

Therefore, § U.S.S.G. 1B1.13 is merely advisory and does not bind the Court's application of 3582(c)(1)(A). McCoy v. United States, 2020 App. Lexis 16636, 2020 WL 2738225 at *4 (E.D. Va. May 26, 2020) See also United States v. Lisi, 2020 U.S. Dist. Lexis 31127, 2020 WL 881994, At *3 (S.D.N.Y) (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release....[But 1B1.13's policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive). And Courts have utilized that power.

United States v. Cantu-Rivera, Case No. 89-CR-204, 2019 U.S. Dist. Lexis 105271, 2019 WL 2578272 (S.D. Tex. June 24, 2019), is instructive with regard to Court's newfound authority to reduce sentences based on "extraordinary and compelling {2020 U.S. Dist. Lexis 23} reasons" (even if those reasons do not relate to medical condition, age or family circumstances).

Initially, the Court in Cantu-Rivera explained that "[T]he First Step Act of 2018 amended § 18 U.S.C. 3582(c)(1)(A) to allow district courts to

Case 7:17-cr-00575-KMK   Document 109   Filed 01/31/21   Page 5 of 17
Case 7:17-cr-00575-KMK   Document 104   Filed 01/14/21   Page 5 of 17

4)

modify sentences of imprisonment upon motion by the defendant if the defendant has fully exhausted all [BOP] administrative rights ...... or 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 2019 U.S. Dist. Lexis 105271. [WL] at *1 (internal quotation marks omitted). It then reduced that defendant's life sentence (for conspiracy to possess with intent to distribute in excess of five kilograms of cocaine) to time served.

Similarly, in United States v. Cantu, Case No. 05-CR-458, 2019 U.S. Dist. Lexis 100923, 2019 WL 2498923 (S.D. Tex June, 17, 2019), the court noted that "[a] court may now," pursuant to §18 U.S.C. 3582(c)(1)(A), "modify a defendant's sentence if it finds on either the BOP's or the defendant's motion that 'extraordinary and compelling reasons warrant such a reduction' and such a reduction is consistent with applicable policy statements issued by the sentencing commission." 2019 U.S. Dist. Lexis 100923 [WL] at *1. It then reduced that defendant's 290-month sentence (which had previously been reduced to 210 months based on amendments 782 and 788 to the guidelines) to time served (after service of more than 14 years

OF IMPRISONMENT) BASED PRINCIPALLY ON HIS MEDICAL CONDITION, EVEN THOUGH HE "HA[D] NOT PRESENTED EVIDENCE THAT HIS REASONS ARE EXTRAORDINARY AND COMPELLING UNDER THE THREE EXPLICITLY DEFINED REASONS" SET FORTH IN APPLICATION NOTE 1 TO SECTION 1B1.13 OF THE GUIDELINES. 2019 U.S. DIST. LEXIS 100923, [WL] AT *3. AND IN UNITED STATES V. MCGRAW, CASE NO. 02-CR-00018 20192 U.S. DIST. LEXIS 78379 2019 WL 2059488 (S.D. IND MAY, 2019), THE COURT STATED THAT THE FIRST STEP ACT'S MODIFICATION OF §18 U.S.C. 3582(c)(1)(A)" "NOW PROVIDES AN AVENUE FOR A DEFENDANT TO SEEK A [SENTENCE REDUCTION DIRECTLY] FROM THE COURT" AND THAT "COURTS HAVE UNIVERSALLY TURNED TO U.S.S.G. 1B1.13 TO PROVIDE GUIDANCE ON THE 'EXTRAORDINARY AND COMPELLING REASONS' THAT MAY WARRANT A SENTENCE REDUCTION." {2020 U.S. DIST LEXIS 25} 2019. U.S. DIST LEXIS 78370 AT *6 [WL] AT *1. IT THEN REDUCED THAT DEFENDANT'S LIFE SENTENCE (FOR POSSESSION WITH INTENT TO DISTRIBUTE METHAMPHETAMINE) TO TIME SERVED (AFTER SERVICE OF MORE THAN 17 YEARS IMPRISONMENT) BASED PRINCIPALLY ON "HIS SERIOUS MEDICAL CONDITIONS," EVEN THOUGH HE HAD A LONG CRIMINAL HISTORY AND HAD OCCUPIED A "LEADERSHIP" POSITION IN THE DIABLOS MOTORCYCLE GANG. 2019 U.S. DIST

Case 7:17-cr-00575-KMK  Document 109  Filed 01/31/21  Page 7 of 17

Case 7:17-cr-00575-KMK  Document 104  Filed 01/14/21  Page 7 of 17    6.)

Lexis 78370 At *11. [WL] At 2-6.

COVID-19 PANDEMIC

Defendant suffers from Type II Diabetes, High Blood Pressure, Severe Sleep Apnea, Chronic Acid Reflux, Asthma, High Cholesterol and Arthritus all over his body, in addition to henrieated disks and sciatica. Defendant is on 8 different pills and tropical treatment. Therefore, Defendant faces a heightened risk of developing severe symptoms once infected due to his Diabetes, Sleep Apnea, & Asthma and High Blood Pressure (ACE Inhibitors), and may even face a heightened risk of contracting COVID-19 in the first place, due to his condition and weak immune system.

As one court recently stated that prisons are "Powder Kegs For Infection" and have allowed "the COVID-19 virus [to] spread [] with uncommon and frightening speed," United States v. Skelos, No. 15-CR-317, 2020 U.S. Dist Lexis 64639, 2020 WL 1847558, At *1 (S.D.N.Y. Apr. 12, 2020). See also An Ohio Prison is now the largest source of virus infections in the

country, The New York Times (Apr. 20, 2020), https://www.nytimes.com/2020/04/20/us/coronavirus-live-news.html#link-52bcdb996 (noting that "four out of 10 largest-known sources of infection in the United States were correctional facilities"). Currently, this second wave is far worse than the first one, and prisons are unable to cope. The number of deaths and infections have skyrocketed.

Several courts have found that the combination of a personal COVID-19 risk factor and especially high-risk prison atmosphere can support a finding that there is an "extraordinary and compelling reason".

The significant outbreak at MDC Brooklyn (which for some strange reason MDC always denies), it must be noted that the first death in the BOP due to the coronavirus was in MDC Brooklyn. See N.Y. Post and PL News issue Nov. Pg 56 ("MDC had previously been in the news as the institution that housed the first death attributed to coronavirus in federal prisons." But if one visit their website there is no mention of that. The cover-up in the federal prisons and especially MDC

Case 7:17-cr-00575-KMK   Document 109   Filed 01/31/21   Page 9 of 17
Case 7:17-cr-00575-KMK   Document 104   Filed 01/14/21   Page 9 of 17

8)

Brooklyn is extensive. Currently nearly 10% of MDC Brooklyn has Corona Virus. 4 different units are affected and 3 different floors are completely shut. Further, it must be noted that MDC is in a lockdown state since March, of this year. According to the officers there are more than 80 inmates and unknown number of staff members who have contracted the virus. (Please see the attached memos by MDC for lockdown process).

This outbreak creates a high likelihood that Defendant will be exposed to COVID-19, in a prison environment in which social distancing is difficult if not impossible. Defendant, in short, {2020 U.S. Dist. Lexis} has a limited ability to minimize his risk of serious illness or death from COVID-19. Defendant thus is "suffering from a serious physical or medical condition...... that substantially diminishes [defendant's] ability to provide self-care" within his particular prison environment. § U.S.S.G. 1B1.13 cmt. n. 1(A)(ii)(I). See, e.g., Colvin, 2020 U.S. Dist. Lexis 5796, 2020 WL 1613943, at *1, 4 (Defendant had diabetes and high blood pressure and

(9)

limited access to necessary medical care in her facility);

Defendant has been designated as "High Risk" by MDC/BOP in March, of this year. Therefore, his elevated risk is increased by the particular circumstances at MDC, which presents an ideal situation for the spread of Covid-19.

Zuckerman, 2020 U.S. Dist. Lexis 59588, 2020 WL 1659880, is especially persuasive. Like Defendant, Zuckerman both had underlying health conditions identified by the CDC as risk factors for serious illness and was incarcerated in a relatively high-risk facility, FCI Otisville, 2020 U.S. Dist. Lexis 59588, 2020 WL 1659880, at *5. In its April 3 opinion, the Court did not note any reported cases of Covid-19 at Otisville. See BOP Covid-19 Database. But like FCI Otisville, MDC Brooklyn's internal architecture inhibits social distancing. See Zuckerman, 2020 U.S. Dist. Lexis 59588, 2020 WL *1, 5; Brechlin and Keating.

The court in Zuckerman emphasized that an extraordinary risk of severe illness and death from Covid-19 can, under certain circumstances, provide an "Extraordinary and Compelling Reason"

for Release As Defined in U.S.S.G 1B1.13 cmt. n. 1(A)(ii)(I), Even When A Significant {2020 U.S. Dist. Lexis 59588, 2020 WL 1659880, At *4, 6. An Emphasis on The Latter Facts, Under Circumstances In Which Individual Covid-19 Risk Factors Are Compounded By An Extraordinary Hazardous Prison Environment, "Misses The Point And Understates The Gravity Of The Covid-19 Pandemic." 2020 U.S. Dist. Lexis 59588. [WL] At *4.

The Judge In United State v. Asaro, No 17-CR-127, 2020 U.S. Dist. Lexis 68044, 2020 WL 1899221, At *8 (E.D.N.Y). Apr. 17. 2020) Explained It Beautifully. ("At Sentencing, I intended To Impose An Above-Guidelines Sentence - Not A Death Sentence..... I Do Not Believe That Continued Detention, In Light Of This Risk [of Serious Illness or Death From Covid-19], Is An Appropriate or Proportionate Way To Further The Purposes of Sentencing ").

In United States v. Raheem Tyler CR No 4:12-cr-37 2020 U.S. Dist. Lexis 171702 - Decided September 18th, 2020.
Like Defendent Mr. Tyler Was In MDC Brooklyn. And The Court Found That His Underlying

Case 7:17-cr-00575-KMK Document 109 Filed 01/31/21 Page 12 of 17
Case 7:17-cr-00575-KMK Document 104 Filed 01/14/21 Page 12 of 17

11)

medical condition make him particularly vulnerable to serious illness or death if he contracts Covid-19.

Currently in MDC Brooklyn according to the staff, Mr. Jones (CO), Mr. Devasty (CO), Ms. Garcia (EMT), Mr. Richards (CO) there are more than 80 cases and several staff members. But even with these confirmed cases, the statistics about the number of infections in BOP facilities may not reflect the exact number of infections given the lack of testing. See United States v. ~~Es~~ Esparza, No. 1:07-cr-00274-BLW, 2020 U.S. Dist. Lexis 65271, 2020 WL 1696084, at *1 (D. Idaho April 7, 2020). Yet, Covid-19 has rapidly spread throughout prisons all over the country, and individuals housed in prisons remain ~~[struck out text]~~

{2020 U.S. Dist. Lexis 8} vulnerable to infection despite the BOP's protection measures. See Muniz, 2020 U.S. Dist. Lexis 59255, 2020 WL 1540325, at *1; see also Esparza, 2020 U.S. Dist. Lexis 65271, 2020 WL 1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not

IMPOSSIBLE TO FOLLOW THE CK'S GUIDELINES FOR PREVENTING THE SPREAD OF THE VIRUS AMONG INMATES AND STAFF. PRACTISING FASTIDIOUS HYGIENE AND KEEPING A DISTANCE OF AT LEAST SIX FEET FROM OTHERS").

THE PRESENT CONDITIONS AT THE MDC, WHICH HAVE NEVER BEEN GOOD, ESPECIALLY THE GENERAL DISREGARD FOR THE MEDICAL NEEDS OF THE INMATES GOING BACK YEARS, NOW ARE HORRIBLE. THE INSTITUTION HAS BEEN ON LOCKDOWN FOR SOME TIME. THE SANITATION AT THE FACILITY LEAVES MUCH TO BE DESIRED, AS DESCRIBED IN A REPORT AND EVALUATION BY DR. HOMER VENTER, ENGAGED BY PLAINTIFFS IN A CIVIL ACTION AGAINST THE WARDEN. DR. VENTER WAS "ALARMED" BY THE CONDITIONS AT THE MDC AND HIS REPORT IS A PAINFUL INDICTMENT OF THE CONDITIONS EXISTING AT THIS FACILITY. FURTHER IN JUNE, 2020, CHIEF JUDGE MAUSKOPF WROTE TO THE WARDEN AND BI-WEEKLY REPORTS ARE REQUIRED BY THE WARDEN, SINCE AN ADMINISTRATIVE ORDER FROM THE COURT

JUDICIARY RECENTLY HAS BEGUN TO RECOGNIZE AND ADDRESS THE EXCEPTIONAL HEALTH CRISIS BROUGHT ABOUT BY THE PRESENCE, SPREAD AND

incidence of the virus generally and at the MDC. Judges have been releasing on bail inmates at the MDC or declining to detain or remand inmates or to impose additional incarceration in particular cases because of the conditions at the MDC.

See United States v. Raihan, 20-CR-68 (BMC).
United States v. Stephens, 15-CR-95 (AJN).
United States v. Santiago Ramos, 20-CR-04 (ER.
United States v. Morgan, 19 CR 209 (RMB). (Where Judge Berman, at sentencing of the defendant, imposed a sentence of time served, in part, as a result of what the Judge termed the "unfortunate, terrible" conditions at the MDC, relying on Dr. Venter's evaluation.

All things being considered, MDC is in the throes of this pandemic and public health crisis.

Defendant who is vulnerable and if the defendant contracts the virus (which is highly possible, since Corona is virtually on every floor), he may never recover, because of his weak immune system.

United State v. Roman is extemely helpful, see United States v. Roman, 2020 U.S. Dist. Lexis 53956, 2020 WL 1908665, at *2 (S.D.N.Y, Mar 27, 2020) (noting that "the fact that [the Defendant takes Lisinopril, an ACE inhibitor, to treat his hypertension likely places him 'at higher risk for severe Covid-19 infection.'") (quoting Lei Feng et al., Are Patients With Hypertension, and Diabetes Mellitus At Increased Risk For Covid-19 Infection?, Lancet (Mar. 11, 2020) AT 1, http://www.thelancet.com/action/showPdf?pii=S2213-2600%2820%2930116-8).

Here, Defendant takes alot more meds then just ACE inhibitors.

Exhaustion of Remedies.

Defendants lawyer, Mr. Rubin filed a Compassionate Releas request with the Warden of MDC on April 6, 2020. (Please see the attached). It was denied in May. However, Unit Team is not working and defendant cannot obtain the copy ~~from his file~~ of denial. But the Request itself should

BE SUFFICIENT, BECAUSE IT WAS OBVIOUSLY DENIED, OTHERWISE I WOULDN'T BE FILING THIS MOTION.

(PLEASE ALSO SEE THE ATTACHED NOTICES OF LOCKDOWN, WE WERE SUPPOSE TO HAVE THEM EVERY 14 DAYS, BUT THESE ARE THE ONLY ONES WE RECEIVED.)

PROGRAMMING AND REHABILITATION.

THIS HAS REALLY BEING AN EYE OPENING EXPERIENCE. AND AT AGE OF 50 DEFENDANT JUST WANTS TO SPEND THE NEXT FEW YEARS OF HIS LIFE IN PEACE. LIFE EXPECTANCY IN DEFENDANT'S FAMILY IS NOT HIGH. DEFENDANT'S FATHER PASSED AWAY AT AGE 69, DEFENDANT'S MOTHER IS A BREAST CANCER SURVIVOR AT AGE 68, HIS BROTHER AT THE AGE OF 51 HAD QUADRUPLE BYPASS SURGERY. DIABETES, HEART PROBLEMS AND CANCER RUNS IN HIS FAMILY.
WHILE AT MDC FOR THE LAST 4 YEARS, DEFENDANT HAS COMPLETED BASICALLY EVERY PROGRAM OFFERED. THIS COURT ALREADY HAVE SOME COPIES WHICH WERE, CHESS INSTRUCTOR (DEFENDANT TAUGHT FOR 2 YEARS, SUICIDE PREVENTION,

Defendant prevented inmates from committing suicide, (not a single incident took place during defendant's shifts, of watching inmates)

Recently defendant completed Financial-Modified Operations, and Effective Communication, Modified Operations, (please see the attached) In addition to these defendant helped inmates with Pre-GED and GED Preperations. Mr. A. Devastey from Education can verify that. Also the Education Dept have a Certificate of Appreciation for me. Mr. Devastey was suppose to bring this week, but right now the whole institute is in chaos.

Recidivism:
Defendant is subject to deportation and is willing to voluntarily deport from the U.S as soon as possible, so that he will no longer be in a position to recidivate. Defendant's Release Date is 2026, As one Court put it, "[a]lthough [his] original release date may be far off, but the threat of COVID-19 is at his doorstep."