# Green & Willstatter
ATTORNEYS AT LAW
200 MAMARONECK AVENUE
SUITE 605
WHITE PLAINS, NEW YORK 10601

THEODORE S. GREEN
RICHARD D. WILLSTATTER

(914) 948-5656
FAX (914) 948-8730

E-MAIL: THEOSGREEN@MSN.COM

August 20, 2024

Hon. Kenneth M. Karas
United States District Court
300 Quarropas Street
White Plains, New York 10601

    re: *United States v. Shahzad Ahmed*, 17-cr-575 (KMK)

Dear Judge Karas:

    This letter is submitted as a motion to reduce Shahzad Ahmed's sentence pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10. Under Amendment 821 to the Sentencing Guidelines, made retroactive by the Sentencing Commission, see U.S.S.G. § 1B1.10(d) (Nov. 2023), the Guidelines range applicable to Mr. Ahmed's case has been lowered to 120 to 121 months. Under all the circumstances, a sentence within that lowered range is appropriate.

### A.   The Amended Guidelines

    Amendment 821 to the Guidelines went into effect on November 1, 2023. Part A of the amendment addresses "status points" for offenders, namely the additional criminal history points given to offenders for the fact of having committed the instant offense while under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. The amendment limits the overall criminal history impact of "status points" in two ways. First, as revised, the "status points" provision under redesignated subsection (e) applies only to offenders with more serious criminal histories under the guidelines by requiring that an offender have seven or more criminal history points under subsections (a) through (d) in addition to having been under a criminal justice sentence at the time of the instant offense. Offenders with six or fewer criminal history points under subsections (a) through (d) will no longer receive "status points." Second, the amendment also reduces from two points to one point the "status points" assessed for offenders to whom the

revised provision applies.

With respect to the reason for the amendment, the Commission explained that after several research studies, the data persuasively showed that although criminal history is strongly associated with likelihood of future recidivism, status points add little to the overall predictive value associated with the criminal history score. *See* U.S. SENT'G COMM'N, REVISITING STATUS POINTS (2022), available at https://www.ussc.gov/research/research-reports/revisiting-status-points. *See* U.S.S.G. App. C, Amendment 821, Reason for Amendment.

"The Commission's action to limit the impact of 'status points' builds upon its tradition of data-driven evolution of the guidelines. As described in the Introduction to Chapter Four, the original Commission envisioned status points as 'consistent with the extant empirical research assessing correlates of recidivism and patterns of career criminal behavior' and therefore envisioned 'status points' as being reflective of, among other sentencing goals, the increased likelihood of future recidivism. *See* USSG Ch.4, Pt.A, intro. comment. The original Commission also explained, however, that it would 'review additional data insofar as they become available in the future.' The Commission's recent research suggests that 'status points' improve the predictive value of the criminal history score less than the original Commission may have expected, suggesting that the treatment of 'status points' under Chapter Four should be refined." *Id*.

The Commission, therefore, concluded that "accounting for status on a more limited basis continues to serve the broader purposes of sentencing while also addressing other concerns raised regarding the impact of status points." *Id*

Explaining the rationale for making the changes to the criminal history rules retroactive, the Commission wrote, "The purpose of these targeted amendments is to balance the Commission's mission of implementing data-driven sentencing policies with its duty to craft penalties that reflect the statutory purposes of sentencing and to reflect 'advancement in knowledge of human behavior as it relates to the criminal justice process.' *See* 28 U.S.C. § 991(b). The Commission determined that the policy reasons underlying the prospective application of the amendment apply with equal force to individuals who are already sentenced." *See* U.S.S.G. App. C, Amendment 825, Reason for Amendment.

To determine the extent of a retroactive sentencing reduction under § 3582(c)(2) for an eligible defendant, a court "shall consider the factors set forth in 18 U.S.C. § 3553(a)" as well as "public safety consideration[s]" (including "the nature and seriousness of the danger to any person or the community that may be posed by a reduction") and the defendant's "post-sentencing conduct." U.S.S.G. § 1B1.10, comment.

2

(n.1(B)). A defendant's sentence can be reduced to the minimum of the new, amended Guideline range. *See* U.S.S.G. § 1B1.10(b)(2)(A).

**B.   Mr. Ahmed Is Eligible for a Sentence Reduction**

The Court originally sentenced Mr. Ahmed on October 17, 2019, following his plea of guilty to one count of conspiracy to import heroin, 21 U.S.C. §§ 963, 906(b)(1)(A) and one count of conspiracy to distribute and possess with intent to distribute heroin, 21 U.S.C. §§ 841(b)(1)(A), 846.   The amount of drugs involved was between three and ten kilograms.  There was no enhancement for role in the offense or for firearms. At that time, the parties agreed and the Court found that applicable guidelines offense level was 29 and that Mr. Ahmed was in criminal history category III, resulting in a guidelines range of 120 to 135 months.  The probation department, at that time, recommended a custodial term of 120 months. The Court imposed a custodial term of 135 months.

Under the retroactive guideline amendment, Mr. Ahmed's criminal history points are reduced from 5 to 3 points, lowering his criminal history category from III to II. At offense level 29 and criminal history category II, the amended range is 120 to 121 months' imprisonment.

The Probation Department, in its supplemental presentence report filed December 29, 2023, has correctly concluded that Mr. Ahmed is eligible for a sentencing reduction. Because the retroactively applicable Amendment 821 reduces Mr. Ahmed's applicable guideline range, he is eligible for a reduction in sentence to within the amended guideline range pursuant to §3582(c)(2); U.S.S.G. § 1B1.10(a)(1).

**C.   The Court Should Exercise its Discretion and Reduce Mr. Ahmed's Sentence to within the Amended Guideline Range**

As documented in the Probation Department's supplementary report, ECF. No. 132, p. 4, (and confirmed by counsel's recent telephone interview with Mr. Ahmed), he has, while in custody, participated extensively in educational and work assignments. These include programs directed to general knowledge and analytical skills (history, vocabulary, geometry, algebra, etc.), programs directed to vocational and career skills (e.g., ACT WorkKeys, Intro to OSHA, small business, career exploration), and programs directed to rehabilitation and self improvement (e.g., behavior modification, weight management).  In addition to the programs listed in the supplementary PSR, Mr. Ahmed advises that he has also taken a non-residential drug program, as well as a disability education program (he provided a certificate for the latter)..

Mr. Ahmed's work assignments have included duties related to recreation

3

(including serving as an umpire), electric shop, orderly, and kitchen work. Mr. Ahmed informed counsel that he has also led prayer services for fellow Muslim inmates, and he has had a role in resolving disputes among inmates. All of the above shows that Mr. Ahmed, far from being a problem inmate, is someone who promotes the good order of the institution.

Mr. Ahmed has had two disciplinary sanctions, and none since May 2020. Both sanctions (the first in January 2019) were for possession of a cell phone. Both occurred while Mr. Ahmed was at the Metropolitan Detention Center in Brooklyn, awaiting transfer to a designated facility. The long delay in his getting transferred out of MDC was due to the onset of the COVID-19 pandemic, which began running rampant a few months after the October 2019 sentencing. He is in a medium security facility.

Mr. Ahmed's extended period of custody at MDC (as well as his overall BOP custody during pandemic conditions) exacerbates the punitive effect of his sentence. The MDC has become notorious for overcrowding, staff shortages, frequent lockdowns, a poorly-functioning physical plant, and "egregiously slow" provision of medical and mental health services. *See United States v. Chavez*, 2024 U.S. Dist. LEXIS 1525, *11-12 (S.D.N.Y. Jan. 4, 2024. Even prior to the pandemic, Mr. Ahmed was housed at MDC during the notorious 10-day "blackout" in the winter of 2019, during which the inmates were deprived of medical services, medication, and hot meals. Moreover, the pandemic conditions, as well as Mr. Ahmed's transfer to geographically distant Bureau of Prisons facilities, has left Mr. Ahmed without the ability to have face-to-face contact with his immediate family. Even though Mr. Ahmed has a modest security classification and his family resides in New York, BOP transferred him to a facility in Wisconsin (following a stint in Allenwood). His geographical remoteness from family has been particularly hard on his mother who wanted very much to see her son prior to her scheduled surgery for a serious illness.

Nonetheless, he maintains remote contact with his family, in particular his mother and his younger brother Fiaz Ahmed, who reside together in Newburgh, New York. Undersigned counsel has spoken with both of these family members, and both remain supportive of Mr. Ahmed. Fiaz Ahmed (a New York probation officer) has submitted a letter (annexed hereto as Exhibit A) describing his brother's positive qualities. These include his efforts to counsel young persons to live law abiding lives, his donating time to charitable causes, his educational accomplishments, the help and care he provided to his mother (who continues to cope with a serious illness), and his nurturing role as an older brother to Fiaz.

At the time the Court sentenced Mr. Ahmed in 2019, it could not have foreseen how the COVID pandemic and nationwide staffing shortages would impact the conditions of confinement and the severity of the punishment Mr. Ahmed would endure.

4

Mr. Ahmed also suffers from a number of health problems, including diabetes, hypertension, sleep apnea, and high cholesterol. He also has a history of lower-back injury from an automobile accident. PSR ¶¶ 64-65.

Neither this conviction, nor Mr. Ahmed's two prior felony convictions, involved allegations of violence.

Mr. Ahmed was raised in Pakistan where he showed promise as a student and an athlete and was even awarded an athletic scholarship to attend school in England. His family instead emigrated to the United States where they settled in Westchester County. As a teenager, he had difficulty adjusting to the new environment. He felt marginalized, which was exacerbated by his being subjected to bullying. He began using marihuana copiously and, in later years, would also use heroin. Nonetheless (and notwithstanding his leaving high school in 11th grade), Mr. Ahmed earned a GED and attended college, earning a bachelor of science degree in 1998. PSR ¶¶ 57-58.

Mr. Ahmed is now 53 years old. According to Sentencing Commission data, "[r]ecidivism rates decline relatively consistently as age increases."USSC, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 12 and Exhibit 9 (May 2004).

Upon his release, Mr. Ahmed hopes to find gainful employment. His educational background, augmented by his program participation while in custody, should serve him well in this goal.

There is nothing about Mr. Ahmed's case that would suggest that he presents a risk to public safety such that a reduction should not be granted. Moreover, aside from two disciplinary sanctions (the last imposed more than four years ago), his overall conduct in custody has been overwhelmingly favorable.

For the above reasons, the Court should resentence Mr. Ahmed to a term within the amended guideline range of 120 to 121 months' imprisonment under the authority of 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10.[1]

Respectfully submitted,

/s/ *Theodore S. Green*
Theodore S. Green

---

[1] Under the sentencing table, the guideline range for offense level 29 and criminal history category II is 97-121 months, but in Mr. Ahmed's case the guideline floor is 120 months due to the statutory minimum. Accordingly, a sentence within 120-121 months would be at or near the top of the guidelines under the amended range.

5

Defendant seeks a reduction in sentence, pursuant to 18 U.S.C. Section 3582(c). In particular, Defendant relies on Part A of Amendment 821, which went into effect in November 2023 and which alters a provision of the Guidelines that applies additional criminal history points, referred to as "status points," for offenders who committed their offense while subject to a criminal justice sentence. Section 3582(c)(2) establishes a "two-step inquiry. A court must first determine that a reduction is consistent with Section 1.B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in Section 3553(a)." Dillon v. United States, 560 U.S. 817, 826 (2010). A defendant is eligible for potential relief if application of Amendment 821 would reduce the Guidelines range below that which applied at the original sentence and if the defendant did not already receive a sentence lower than the amended range on any ground other than substantial assistance.

Even if a defendant qualified for potential relief, the Court may deny the sentence reduction application based on consideration of the factors set forth in 18 U.S.C. § 3553(a). See U.S.S.G. § 1B1.10 app. Note 1(B)(i). Among other things, the Court may consider public safety and post−sentencing conduct by the defendant. See United States v. Darden, 910 F.3d 1064, 1068 (8th Cir. 2018). Accordingly, courts in this District have denied sentence reductions sought under Amendment 821 where they found that the Section 3553(a) factors still supported the original sentence imposed. See, e.g., United States v. Hernandez, No. 21 Cr. 519, Dkt. No. 65 at *1 (S.D.N.Y. Apr. 23, 2024); United States v. Calk, No. 19 Cr. 366, Dkt. No. 318, at *2-3 (S.D.N.Y,. Mar. 4, 2024); United States v. Kharizan, No. 21 Cr. 603, Dkt. No. 1247, at *3 (S.D.N.Y. Jan. 17, 2024).

Here, application of Amendment 821 reduces Defendant's Guidelines Range from 120 to 135 months to 120 to 121 months. However, the Court finds that application of the Section 3553(a) factors continues to fully justify the sentence the Court originally imposed. Defendant and his brother imported substantial quantities of heroin using a sophisticated scheme. Moreover, the Defendant (and his brother) had a long record of committing previous drug offenses together at the time they committed the instant offense. Defendant's brother had previous convictions in the Eastern District of New York for conspiring to distribute heroin, for which he was sentenced principally to 78 months' imprisonment in 1999, and in the Southern District of New York for conspiring, with Defendant and others, to import, and to distribute and possess with intent to distribute, heroin, for which he was sentenced principally to 188 months' imprisonment in 2004. (PSR-M ¶¶ 44-45). Defendant also had previous convictions in the District of New Jersey for misprision of a felony, for which he was sentenced principally to 24 months' imprisonment in 1994, and in the Southern District of New York for conspiring, with his brother and others, to import from Pakistan, and to distribute and possess with intent to distribute, heroin, for which he was sentenced principally to 262 months' imprisonment in 2002 (reduced to 210 months' imprisonment in 2015). (PSR ¶¶ 45-46). This is a very troubling criminal history (for which Defendant could have been eligible to be sentenced to 240 months' imprisonment had the Government filed a prior felony conviction information) and that is what drove the sentence the Court imposed. Those factors have not changed with the passage of time (or Defendant's post-sentence conduct or his age). Accordingly, the application is denied.

So Ordered

9/18/24